134 So.2d 497 (1961)
STATE of Florida ex rel. Henry Allan BARANCIK, Appellant,
v.
Easter Lily GATES, as Supervisor of Registration, Broward County, Florida, Appellee.
No. 31150.
Supreme Court of Florida.
November 17, 1961.
Howard M. Duncanson, Hollywood, for appellant.
Ross, Norman & Cory, Ft. Lauderdale, for appellee.
DREW, Justice.
Appellant, Henry Allan Barancik, a registered and qualified elector of Broward County, Florida, was advised by letter from the Supervisor of Registration of said county that his name had been stricken from the registration books of said county in accordance with the provisions of Sections 98.201[1] and 101.59,[2] Florida Statutes 1959, *498 F.S.A. In the letter appellant was further advised by the Supervisor that he could apply to her office under Section 98.291,[3] Florida Statutes 1959, F.S.A., for the restoration of his name to the books "upon giving good and sufficient proof that your name was improperly removed."
While not essential to the determination of the narrow issues presented on this appeal, appellant did appear before the Supervisor with voluminous documents for the purpose of establishing the validity of his residence but, because the Supervisor was unable to see him at that time and personally examine said documents, no hearing thereon was ever held nor was any action ever taken by the Supervisor in connection therewith. Appellant then instituted mandamus proceedings against the Supervisor to compel the restoration of his name to the list of qualified voters, alleging that Sections 98.201 and 101.59, supra, were unconstitutional and void as being contrary to the Fifth and Fourteenth Amendments to the Constitution of the United States and Section 1[4] of the Declaration of Rights of the Constitution of the State of Florida because said statutes failed to provide for notice and opportunity to the elector to be heard. Extended hearings before the trial judge resulted in a final judgment upholding the validity of these statutes and dismissing the mandamus proceedings. It is from such final judgment that this direct appeal has been taken to this Court.[5]
Among other things the trial court held:
"* * * The requirements of due process of law insofar as a right to a hearing is concerned, are satisfied by the provisions of Section 101.59, Florida Statutes, 1959, giving the person whose name has been stricken from the voters list the right to appear before the supervisor and establish the legality of his registration and the provisions of Section 98.291, providing that upon application and proof the name may be restored by the supervisor or by the Board of County Commissioners if the supervisor fails to do so. * * *
* * * * * *
"Petitioner contends that Section 101.59, F.S. 1959 violates the Fourteenth Amendment of the United States Constitution and Section 1[4] of the Declaration of Rights of the State of Florida by failing to provide the elements of due process of law. This contention is without merit. The great weight of authority and the law of the State of Florida is to the effect that the right to vote is not a natural, absolute or vested right of which a person or citizen cannot be deprived without due process of law, but is a political right as distinguished from a civil right, property right or right of person. * * *" (Emphasis supplied.)
The narrow issue presented on this appeal is whether the failure of these designated statutes to provide for notice and a hearing to the appellant before striking his name from the registration list comports with the requirement of due process under the Federal and State Constitutions. In the discussion of this problem which follows, *499 the question of the kind of notice required to be given to the elector to immunize such statutes against the constitutional attack here made is neither raised in these proceedings nor in any way passed upon in this opinion. This record shows that no notice was ever given to the appellant in this case and it is clear that no notice is required by the questioned statutes.[6] Moreover, the question of whether such statutes are void because they delegate to an administrative officer judicial functions is likewise unnecessary to a determination of this cause and is therefore not decided.[7]
The learned trial judge unquestionably reached the conclusion he did on the false premise which appeared in the emphasized portion of the above-quoted portion of his judgments. Having accepted an erroneous premise, it was inevitable that an erroneous result would be reached.
On this subject generally, we quote with approval from two highly respected texts as follows:
"A qualified elector who complies with the law and who is registered has a personal right to have his name remain on the register or voting list for the period prescribed by law. He cannot be deprived of this right without some procedure which complies with the requirements of due process of law. His name should not be stricken where investigation shows that he is properly registered, or that he has a prima facie right to be registered; nor should his name be stricken in the absence of proof that he is disqualified, or where there is any uncertainty as to the facts, except where he fails, after due notice, to appear at the time fixed for the hearing of the challenge.
"The statutes do, however, permit and require the correction or alteration of the list, provided proper notice is given to the registrants affected, and the statutory procedure is followed in other respects. * * *" 29 C.J.S. Elections § 48 (1941).
"* * * registrants for an election cannot be deprived of the right to vote by cancelation of their registrations on the ground that such registrations were fraudulent, without being regularly served with process, where the legislature has not provided for some lawful method for substituted service. The courts of some states hold, however, that service of notice of the hearing for the purpose of striking illegal registrations is unnecessary. The governing statute usually contains express provisions with respect to parties to such a proceeding. In the absence of such a provision, questions as to who are necessary or proper parties must be determined by the application of the general principles relating to the subject * * *." 18 Am.Jur., Elections, Section 96 (1938).
The right to vote and to have one's name remain upon the registration list is a right which transcends property rights. *500 It is the keystone in the arch of liberty. The first act of the dictator is to destroy the right to exercise the ballot and, once this has been brought about, the loss of liberty and confiscation of property become simple matters. Property rights are necessarily tied to the question of citizenship or the right to vote. In a close case the question of whether one is a registered voter may well determine his right to protect his home against the execution of creditors or bring it within the category of properties which enjoy tax advantages under the Constitution.[8] Striking a person's name from the registration books may well determine the extent of the inheritance to which his children may be entitled. Candidates for public office may be irreparably harmed if their names are removed from the registration list of the county without their knowledge and an opportunity to be heard.[9]
The legal mind would reject instantly the idea that any judicial officer could render a judgment in a civil or criminal action against a person without previous notice and an opportunity to be heard. Here we are dealing with a far more sacred concept. We know of no principle under which one's name may be stricken from a registration list without previous notice and an opportunity to be heard (if in fact such can then be done by an administrative officer), nor have we found any authority which upholds such a proposition.[10]
Due process under the Federal and State Constitutions has been discussed and defined on innumerable occasions by the courts. It contemplates reasonable notice and an opportunity to appear and be heard before judgment is pronounced.
"The organic requirements of due process of law are controlling when life, liberty or property rights are involved in any official action, whether such action be the exercise of `the powers of government' by those `properly belonging' to the governmental departments respectively as divided and limited by the constitution, or whether the action is a duly authorized administrative or ministerial function or duty." (Second italics ours. Williams v. Kelly, as City Clerk, 133 Fla. 244, 246, 182 So. 881, 882 [1938]).
Being fully cognizant of our responsibility to uphold the validity of acts of the Legislature wherever possible, we are nevertheless impelled to the conclusion that Sections 98.201 and 101.59, Florida Statutes 1959, F.S.A., are unconstitutional and void for failure to comply with the essential elements of due process under the Federal and State Constitutions.
For the foregoing reasons, the judgment is reversed and the cause remanded with instructions to the trial court to enter a final judgment in accordance with the requirements of this opinion.
ROBERTS, C.J., THOMAS, THORNAL and O'CONNELL, JJ., and STURGIS, District Court Judge, concur.
HOBSON, J., concurs specially.
HOBSON, Justice (concurring specially).
I concur in the excellent opinion prepared by DREW, J. However, I feel that mention should be made of our decision in Larson v. Warren, Fla., 132 So.2d 177. In that case it was held that due process did *501 not require notice and hearing prior to the state treasurer's invoking the sanctions provided for by Chapter 324, F.S.A., the Driver's Financial Responsibility Act. In the Larson case, however, we were dealing, not with the fundamental right of a citizen to vote, but with the privilege of operating a dangerous instrumentality on the highways of this state. For this reason, it is my opinion that the decision in this case, and that in the Larson case are harmonious, and that both are correct.
NOTES
[1] "98.201 Custodian of registration books.  The supervisor is the official custodian of the books of registration with the exclusive control of matters pertaining to the registration of electors. Whenever it shall come to his knowledge that any elector has died or has become disqualified to vote by reason of conviction of any disqualifying crime or from other causes, or has removed from the county or to another precinct without obtaining a certificate of transfer, or his right to vote has become affected since his registration, the supervisor shall make a note on the books opposite the elector's name, and mark off the name by running a pen through it and note the date of erasure, and no election official shall allow such person to vote, whether the person has a certificate or not, unless he exhibits to the election officials a certificate signed by the supervisor showing that he has been restored to the books subsequent to the date of the erasure.

"The supervisor may, at any time, process and forward to any elector a post or renewal card to verify the qualifications of an elector and, on the nonreturn of such card within the prescribed time set by law, shall proceed as otherwise provided in § 98.081 for nonreturns."
[2] "101.59 Striking names from registration books.  The supervisor shall strike from the registration books any name appearing thereon where he has evidence that the person registered illegally, however the person has a right to appear before the supervisor and establish the legality of his registration, in which event his name shall be restored to the books."
[3] "98.291 Names may be restored to registration books.  When the name of any elector has been wrongfully or erroneously erased, the name of the elector is restored by the supervisor on application and proof to him, or restored by order of the Board of County Commissioners, if the supervisor fails to do so."
[4] It is Section 12, not Section 1, of the Declaration of Rights of the Constitution of Florida which relates to due process.
[5] Article V, Section 4(2) provides for direct appeal to the Supreme Court as a matter of right from final judgments directly passing upon the validity of a state statute.
[6] It is to be gathered from the record here that a permanent registration system is in effect in Broward County and that Section 98.081, providing for periodic removal of names from the list and setting forth the requirements therefor, including notice, is applicable in said county. The validity of this particular statute is neither questioned nor in any way passed upon in these proceedings. (See Chap. 61-86, Laws of Florida which changed removal period from Jan. 1-Jan. 31 to Oct. 1-Jan. 31.)
[7] See the discussions of this proposition (admittedly obiter) by Chief Justice Randall in State ex rel. Scott v. Board of County Commissioners of Jefferson County, 17 Fla. 707, text 715, et seq. (1880). In the instant case the cause assigned by the supervisor for removing appellant's name was that he had ceased to be a resident of Broward County, Florida. The question of "residence" has been a source of much litigation in this Country and decisions on this subject have taxed the minds of the most astute and learned judges.
[8] Article X, Constitution of the State of Florida, F.S.A.
[9] For example, see Article III, Section 8, Constitution of the State of Florida.
[10] See the annotation in 91 A.L.R. beginning at page 375 and the numerous cases therein cited. Also see Greenan v. Braca, 18 N.J. 361, 113 A.2d 772, 774 (N.J. 1955) and In re Opinion of the Justices, 65 R.I. 451, 16 A.2d 331, 332 (R.I. 1940).